Evan J. Smith
BRODSKY SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUGH KREMER,<br><br>                    Plaintiff,<br><br>vs.<br><br>GP STRATEGIES CORPORATION, SCOTT N. GREENBERG, ADAM H. STEDHAM, SAMUEL D. ROBINSON, TAMAR ELKELES, MARSHALL S. GELLER, STEVEN E. KOONIN, JACQUES MANARDO, and RICHARD C. PFENNIGER, JR.,<br><br>                    Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Hugh Kremer ("Plaintiff"), by and through his attorneys, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder action against GP Strategies Corporation ("GP Strategies" or the "Company"), the Company's Board of Directors (the "Board" or the "Individual Defendants,"), and collectively with GP Strategies, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of the Individual

- 1 -

COMPLAINT

Defendants' efforts to sell the Company to Learning Technologies Group plc ("Parent"), through Gravity Merger Sub, Inc. ("Merger Sub," and collectively with Parent, "Learning Technologies Group") as a result of an unfair process and to enjoin an upcoming stockholder vote on a proposed all cash transaction acquiring all of the Company's remaining outstanding shares, valued at approximately $394 million (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a July 15, 2021 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Parent, a company which is controlled by Learning Technologies Group Capital, will acquire all of the remaining outstanding shares of GP Strategies' common stock at a price of $20.85 per share in cash. As a result, GP Strategies will become an indirect wholly-owned subsidiary of Learning Technologies Group.

3. Thereafter, on August 11, 2021, GP Strategies filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, the Preliminary Proxy Statement describes an insufficient process in which the Board failed to conduct a proper market check for potentially interested third parties, despite engaging in a sales process that dragged on for multiple years.

5. Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed

COMPLAINT

Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on August 11, 2021 with the SEC in an effort to solicit Plaintiff to vote his GP Strategies shares in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for GP Strategies, provided by GP Strategies to the Company's financial advisor Jefferies LLC ("Jefferies"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Jefferies and provided to the Board

7. Accordingly, this action seeks to enjoin the Proposed Transaction.

8. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

9. Plaintiff is a citizen of Indiana and, at all times relevant hereto, has been a GP Strategies stockholder.

10. Defendant GP Strategies is a global workforce transformation provider of organizational and technical performance solutions. GP Strategies is incorporated in Delaware and has its principal place of business at 70 Corporate Center, 11000 Broken Land Parkway, Suite 300,

Columbia, MD 21044. Shares of GP Strategies common stock are traded on the NYSE under the symbol "GPX."

11. Defendant Scott N. Greenberg ("Greenberg") has been a Director of the Company at all relevant times. In addition, Greenberg serves as the Company's Chairman of the Company Board.

12. Defendant Adam H. Stedham ("Stedham") has been a director of the Company at all relevant times. In addition, Stedham serves as the Chief Executive Officer ("CEO") and President.

13. Defendant Samuel D. Robinson ("Robinson") has been a director of the Company at all relevant times. In addition, Robinson serves as the Company's Lead Independent Director.

14. Defendant Tamar Elkeles ("Elkeles") has been a director of the Company at all relevant times.

15. Defendant Marshall S. Geller ("Geller") has been a director of the Company at all relevant times.

16. Defendant Steven E. Koonin ("Koonin") has been a director of the Company at all relevant times.

17. Defendant Jacques Manardo ("Manardo") has been a director of the Company at all relevant times.

18. Defendant Richard C. Pfenniger, Jr. ("Pfenniger") has been a director of the Company at all relevant times.

19. The defendants identified in paragraphs 6 through 13 are collectively referred to herein as the "Director Defendants" or the "Individual Defendants."

20. Non-Defendant Learning Technologies Group is a leader in the high-growth workplace learning and talent industry. Learning Technologies Group is a public limited company incorporated in England and Wales and has its headquarters in London, United Kingdom.

21. Non-Defendant Merger Sub is a wholly owned subsidiary of Learning Technologies Group created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

23. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

25. GP Strategies provides performance improvement and learning solutions worldwide. The Company offers workforce transformation services, including organizational performance solutions comprising managed learning services, digital learning strategies and content development, business consulting, and leadership development solutions; and technical performance solutions consisting of technical training and consulting services, enterprise technology adoption, and human capital management implementation services. Its workforce transformation services also include

comprise automotive performance solutions, which consists of workforce development services; sales enablement solutions, including custom product sales training; and other customer loyalty and marketing related services. The Company serves multinational automotive manufacturers, financial services companies, technology services companies, aerospace services companies, and governmental agencies. GP Strategies was founded in 1959 and is headquartered in Columbia, Maryland.

26. The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated impressive financial results. For example, in the May 6, 2021 Press Release announcing its 2021 Q1 financial results, the Company highlighted Net income of $1.7 million compared to a net loss of $1.3 million for the first quarter of 2020, Gross profit of $21.4 million, or 18.7% on revenue of $114.6 million, and Earnings per share of $0.09 f compared to a net loss per share of $(0.08) for the first quarter of 2020.

27. Defendant CEO Stedham commented on the results in the Press Release, "'The first quarter reflects the benefits of our solid execution, through what was a challenging time for many parts of the economy, and we begin 2021 from a position of strength with the ability to capitalize on the opportunities ahead. Our gross margin percentage, for the first quarter of 2021, is the strongest for the company in the last ten years for a first quarter. We believe that the learning industry has macroeconomic tailwinds that will propel our growth. We end the first quarter with improving market conditions, a focused strategy, no debt, significant availability under our credit facility and a higher margin profile.'"

28. Despite this successful year and positive outlook, the Individual Defendants have caused GP Strategies to enter into the Proposed Transaction for insufficient consideration.

*The Flawed Sales Process*

29. As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible no matter the price.

30. Notably, the Preliminary Proxy Statement indicates that no market check for potentially interested parties was conducted by the Board or anyone on its behalf throughout the sales process. In fact, it seems that besides Learning Technologies Group, the Company only briefly engaged with one other potentially interested third party, who contacted the Company of their own accord.

31. This lack of a market check is further exacerbated by the fact that the sales process here was unusually long, lasting for approximately two years, and seeing the Company continually extend an exclusivity agreement it had with Learning Technologies Group despite the increasingly long timeframe of the process.

32. Additionally, while the Preliminary Proxy Statement indicates that the Executive Committee was empowered to serve as a transaction committee for the purposes of the sales process, it fails to specifically indicate what powers the committee held in that regard and if the members on such committee were independent, disinterested directors.

33. In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Learning Technologies Group, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, and if so in what way and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

34. It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

*The Proposed Transaction*

35. On July 15, 2021, GP Strategies issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **Columbia, MD., – July 15, 2021 –** GP Strategies Corporation (NYSE: GPX), a global workforce transformation solutions provider, today announced it has entered into a definitive agreement to be acquired by Learning Technologies Group (AIM: LTG.L), a provider of services and technologies for digital learning and talent management, for $20.85 per GP Strategies share in cash, in a transaction valued at approximately $394 million. This transaction represents a premium of 40% over the volume weighted average closing price of GP Strategies shares over the past 180 days, 30% over the volume weighted average closing price over the past 60 days and 32% over the closing price on July 14, 2021, the last trading day prior to this announcement. GP Strategies' Board of Directors has unanimously approved the transaction.
>
> Together, Learning Technologies Group and GP Strategies will create one of the world's largest workforce transformation companies providing solutions to help organizations and their employees operate more effectively by delivering innovative and superior training, consulting, and business improvement services that are customized to meet its clients' needs. This transaction will also provide GP Strategies access to a larger client base, broader product and services offerings, and a larger global footprint, unlocking substantial value and growth opportunities driven by greater scale, diversity and balance across all products, services, and geographies.
>
> "This transaction represents a tremendous opportunity for our customers and our talented employees to work with the global leader in workplace talent and learning, while providing our shareholders with a meaningful premium to our existing stock price," said Adam Stedham, Chief Executive Officer at GP Strategies. "This combination not only accelerates our growth strategy, but it will also bolster GP Strategies' best-in-class platform with complementary products and specialist services to drive successful and meaningful workforce transformation for our clients. Together, we will offer a customized, holistic tool kit to organizations at the forefront of workplace innovation all around the globe."
>
> Mr. Stedham continued, "This agreement with Learning Technologies Group is a true testament to the many strengths of our organization, including our reputation in the industry, technical expertise and highly qualified workforce. This combination will position both companies for immediate success and long-term growth while providing GP Strategies shareholders with immediate and certain premium value."

"LTG has long admired GP Strategies and has been in regular contact with their management about a possible combination over the past few years," said Jonathan Satchell, Chief Executive of Learning Technologies Group. "I look forward to welcoming GP's teams and people, who are joining an exciting journey as we benefit from consolidation of the growing corporate learning and talent management industry."

The transaction is expected to be completed during the fourth quarter of 2021, subject to GP Strategies shareholder approval, regulatory clearances, and other customary closing conditions. Upon closing of the transaction, GP Strategies will become a division of Learning Technologies Group and its shares will no longer be listed on the NYSE. The Company expects to continue to go to market with the GP Strategies brand and portfolio of offerings.

Sagard Capital Partners Management, GP Strategies' largest shareholder, supports the transaction and has entered into a voting and support agreement to vote its shares in favor of the transaction, subject to customary terms and conditions.

*Potential Conflicts of Interest*

36. The breakdown of the benefits of the deal indicate that GP Strategies insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of GP Strategies.

37. Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, while the Preliminary Proxy Statement provides the following information, it fails to disclose an accounting of how much merger consideration will be afforded to Company insiders as a consequence of the consummation of the Proposed Transaction and the cashing out of these amounts.

| Name of Beneficial Owner | Shares beneficially owned | Percentage owned[1] |
|---|---|---|
| ***Directors and Executive Officers:*** | | |
| Scott N. Greenberg | 304,299[2] | 1.7% |
| Adam H. Stedham | 222,229[2] | 1.3% |
| Tamar Elkeles | 13,040 | * |

| | | |
|---|---:|---:|
| Marshall S. Geller | 166,483 | 0.9% |
| Steven E. Koonin | 21,214 | * |
| Jaxques Manardo | 13,539 | * |
| Richard C. Pfenniger, Jr. | 55,753 | * |
| Samuel D. Robinson | 3,660,855[3] | 20.9% |
| Russell L. Becker | 85,554[2] | * |
| Michael R. Dugan | 83,496[2] | * |
| Donald R. Duquette | 107,671[2] | * |
| William J. Maggio | 59,090[2] | * |
| *Directors and Executive Officers as a Group (14 persons)* | 4,914,440[4] | 28.0% |
| **5% or greater stockholders:** | | |
| Sagard Capital Partners, L.P.[5] | 3,639,367 | 20.7% |

38. Moreover, upon the consummation of the Proposed Transaction, the Preliminary Proxy Statement indicates that each outstanding Company restricted share unit, performance share unit, or other equity award will be canceled and converted into the right to receive certain consideration, not shared by Plaintiff, according to the merger agreement, as follows:

| | Number of Shares of GP Strategies Common Stock Underlying GP Strategies RSUs[1] (#) | Cash Consideration Payable in Respect of GP Strategies RSUs[2] ($) |
|---|---:|---:|
| **Executive Officers** | | |
| Adam H. Stedham | 79,863 | 1,665,144 |
| Michael R. Dugan | 15,767 | 328,742 |
| Donald R. Duquette | 15,767 | 328,742 |
| Russell L. Becker | 16,556 | 345,193 |
| William J. Maggio | 9,435 | 196,720 |
| James L. Galante | 8,719 | 181,791 |
| Klaus Woeste | 20,624 | 430,010 |
| **Directors**[3] | | |
| Scott N. Greenberg | 15,192 | 316,753 |

| | Number of Shares of GP Strategies Common Stock Underlying GP Strategies PSUs[1] (#) | Cash Consideration Payable in Respect of GP Strategies PSUs[2] ($) |
|---|---:|---:|
| **Executive Officers** | | |
| Adam H. Stedham | 168,619 | 3,515,706 |
| Michael R. Dugan | 80,096 | 1,670,002 |
| Donald R. Duquette | 65,096 | 1,357,252 |
| Russell L. Becker | 77,059 | 1,606,680 |
| William J. Maggio | 54,087 | 1,127,714 |
| James L. Galante | 33,836 | 705,481 |
| Klaus Woeste | 51,302 | 1,069,647 |

39. In addition, certain employment agreements with certain GP Strategies executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Golden Parachute Compensation**

| Name | Cash[1] ($) | Equity[2] ($) | Perquisites/ Benefits[3] ($) | Total ($) |
|---|---|---|---|---|
| Adam H. Stedham | 714,000 | 5,180,850 | 59,814 | 5,954,664 |
| Scott N. Greenberg | 980,000 | 316,753 | 47,565 | 1,344,318 |
| Michael R. Dugan | 148,750 | 1,998,744 | 12,348 | 2,159,842 |
| Donald R. Duquette | 297,500 | 1,685,994 | 40,296 | 2,023,790 |
| Russell L. Becker | 148,750 | 1,951,873 | 15,486 | 2,116,109 |
| William J. Maggio | 120,000 | 1,324,434 | 20,160 | 1,464,594 |

40. The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41. Thus, while the Proposed Transaction is not in the best interests of GP Strategies, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and director.

*The Materially Misleading and/or Incomplete Preliminary Proxy Statement*

42. On August 11, 2021, the GP Strategies Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation their fiduciary duties, failed to provide Plaintiff in his capacity as a Company stockholder with material information

and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

43. Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

a. The specific reasoning as to why no market check for potentially interested third parties was conducted by the Board or anyone on its behalf throughout the sales process;

b. The specific powers of the transaction committee;

c. Whether the members of the transaction committee were independent, disinterested directors;

d. Whether the confidentiality agreements entered into by the Company with and Learning Technologies Group differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in what way;

e. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Learning Technologies Group, would fall away; and

f. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the

Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning GP Strategies' Financial Projections*

44. The Preliminary Proxy Statement fails to provide material information concerning financial projections for GP Strategies provided by GP Strategies management and relied upon by Jefferies in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

45. Notably the Preliminary Proxy Statement reveals that as part of its analyses, Jefferies reviewed, "certain information furnished to Jefferies by GP Strategies' management, including financial forecasts and analyses, relating to the business, operations and prospects of GP Strategies."

46. Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that GP Strategies management provided to the Board and Jefferies. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

47. With regard to the *April 2021 Financial Forecasts* the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

    a. Adjusted EBITDA, including all underlying necessary metrics, assumptions, and adjustments, including specifically: interest, taxes, depreciation and amortization and the specific adjustments made for non-recurring items and non-cash share based compensation.

COMPLAINT

48. With regard to the *July 2021 Financial Forecasts* the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

   a. Adjusted EBITDA, including all underlying necessary metrics, assumptions, and adjustments, including specifically: interest, taxes, depreciation and amortization and the specific adjustments made for non-recurring items and non-cash share based compensation;

   b. EBIT, including all underlying necessary metrics, assumptions, and adjustments, including specifically: interest and taxes;

   c. After-Tax EBIT, including all underlying necessary metrics, assumptions, and adjustments, including specifically: interest, taxes, and cash taxes.

   d. Unlevered Free Cash Flow, including all underlying necessary metrics, assumptions, and adjustments, including specifically: interest, taxes, cash taxes, depreciation and amortization, capital expenditures, and changes in net working capital.

49. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

50. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Jefferies' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Jefferies*

52. In the Preliminary Proxy Statement, Jefferies describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions

53. With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose:

   a. The present value of the terminal value of GP Strategies utilized;

   b. The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 3.0% to 4.0%;

   c. The specific inputs and assumptions used to determine the utilized discount rate range of 11.0% to 11.5%;

   d. GP Strategies' net debt;

   e. GP Strategies' net cash; and

   f. The number of fully diluted share of GP Strategies common stock.

54. With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose:

   a. The specific metrics for each selected company; and

   b. The specific inputs and assumptions used to determine the selected multiple range of 8.5x – 10.5x and 8.0x – 9.5x for the metrics of 2021E Adjusted EBTITDA and 2022E Adjusted EBITDA, respectively.

55. With respect to the *Selected Transactions Analysis*, the Preliminary Proxy Statement fails to disclose:

   a. The specific metrics for each selected transaction;

   b. The specific date on which each selected transaction closed;

   c. The aggregate value of each selected transaction; and

    d. The specific inputs and assumptions used to determine the selected multiple range of 9.5x – 12.0x LTM Adjusted EBITDA.

56. With respect to the *Equity Research Analysis*, the Preliminary Proxy Statement fails to disclose:

    a. The specific share price targets utilized; and

    b. The specific research analysts that created the share price targets utilized.

57. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

58. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public GP Strategies stockholder. As such, the violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

59. Plaintiff repeats all previous allegations as if set forth in full herein.

60. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

61. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

62. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

63. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Definitive Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

64. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

65. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Definitive Proxy Statement not misleading.

66. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the

Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

67. Plaintiff repeats all previous allegations as if set forth in full herein.

68. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

69. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

70. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of GP Strategies' business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them

but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

71.     The Individual Defendants acted as controlling persons of GP Strategies within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause GP Strategies to engage in the wrongful conduct complained of herein. The Individual Defendants controlled GP Strategies and all of its employees. As alleged above, GP Strategies is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.  Enjoining the Proposed Transaction;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 19, 2021

**BRODSKY SMITH**

By: /s/ Evan J. Smith
Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*